IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MARIBETH MARINO DAWSON,<br><br>    Plaintiff,<br><br>v.<br><br>(1) CITY OF OKLAHOMA CITY EX REL. OKLAHOMA CITY POLICE DEPARTMENT; and<br>(2) DETECTIVE ROBERT VARNEY,<br><br>    Defendants. | Case No.:  CIV-19-19-SLP<br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

**COMPLAINT**

COMES NOW the Plaintiff, Maribeth Marino Dawson, and for her cause of action against the Defendants, alleges and states the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a resident of the State of Oklahoma, living in Oklahoma County, Oklahoma.

2. Defendant City of Oklahoma City ex rel. Oklahoma City Police Department ("OKCPD") is a political subdivision operating in Oklahoma County.

3. Defendant Robert Varney was, at all times relevant hereto, an employee of the OKCPD working as a detective in the OKCPD's white-collar division, acting under the color of state law.

4. Prior to filing this action, Plaintiff gave proper notice of her claims, as required by the Oklahoma Government Tort Claim Act, 51 O.S. § 151, *et seq.*, by serving her written claim on the Oklahoma City Clerk. This action is timely filed within 180 days of the denial of Plaintiff's claims, as required by 51 O.S. § 157.

5. This jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and Fourteenth Amendment to the

United States Constitution as enforced by 42 US.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

6. The jurisdiction of this Court is also invoked under 28 US.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

9. Paragraphs 1-8 are incorporated herein by reference.

10. On or about May 9, 2017, three (3) OKCPD officers contacted Plaintiff's mother, looking for Plaintiff. After being advised by her mother that police officers wanted to speak with her, Plaintiff contacted the officers and gave them her address and invited them to come by that evening.

11. Upon their arrival, Plaintiff was advised that a felony warrant had been issued for her arrest, along with eight (8) other people, for "exploiting the elderly."

12. Plaintiff was shocked and upset having completely no idea what the officers could possibly be talking about or what was going on.

13. Plaintiff was home alone with her five (5) year old daughter when the officers arrived.

14. Plaintiff's daughter was greatly distressed and anxious by the presence of the officers in her home and the possibility that her mother might be arrested.

15. Plaintiff assured the officers there must be some mistake, she was never around any person who might be considered elderly and had no motive or opportunity to commit any financial crime against an elderly person.

16. After reviewing her documentation, including her identification card, and learning that she worked in the Admissions Department at the Oklahoma State University's Oklahoma City ("OSU OKC") campus, the officers declined to arrest her that evening upon her assurance that she would contact the OKCPD's white-collar division the next day.

17. After the officers left, Plaintiff and her daughter were anxious and upset and went to Plaintiff's parents' house to spend the night.

18. Shortly thereafter, at approximately 2:45 a.m. on May 10, 2017, three (3) *different* officers arrived at Plaintiff's parents' house and rang the doorbell.

19. Plaintiff's mother got out of bed and answered the door.

20. These officers advised they knew nothing about Plaintiff's earlier encounter with the other officers and were under strict orders to arrest Plaintiff.

21. The officers hand-cuffed the Plaintiff behind her back, put her in the back of a patrol car and transported her to the Oklahoma County jail in the middle of the night where she was frisked, finger-printed, and her mug shot taken.

22. The phones in the holding cell where Plaintiff was housed were never operable.

23. Plaintiff was not offered food during her imprisonment until after 1:00 p.m. on May 10, 2017.

24. Plaintiff was held until approximately 3:00 p.m. on May 10, 2017 when she was released after her parents posted a bond on her behalf.

25. The evening of May 10, 2017, feeling extremely anxious and distressed, Plaintiff and her daughter again spent the night at her parents' house although Plaintiff was unable to sleep.

26. The following day, May 11, 2017, Plaintiff went to work at OSU OKC to explain her absence to her supervisor and her Human Resources department.

27. At the time of her arrest, Plaintiff was applying for a promotion and was waiting to hear from her supervisor whether she would be awarded the position or not.

28. Thankfully, Plaintiff was not terminated for her "no call no show," but she was instructed to remain on campus until the matter was resolved, even though her job description required her to travel to career tech campuses. Because of the pending felony charge, the school considered it a liability for Plaintiff to carry out her duties as usual.

29. The night of May 11, 2017, Plaintiff was again unable to sleep.

30. On the morning of May 12, 2017, at work Plaintiff walked to the second floor of her building to get coffee when she saw a uniformed police officer – not an unusual sight ast part of her job involves assisting officers and hopeful officers navigate their educational courses. However, that morning, when she saw the officer Plaintiff suffered a panic attack and quickly retreated to her office to avoid being seen and to try and calm down.

31. After Plaintiff calmed down, she made an appointment with an attorney to assist her with the felony charges pending against her.

32. The attorney, Patrick Quillin, a well-respected attorney familiar with the Oklahoma County District Attorney's Office, accepted Plaintiff's case and charged her a retainer fee of $6,000.00 for the pretrial stages of the case.

33. Plaintiff borrowed the retainer fee from her parents. To date, she has been unable to pay them back for the loan of either the retainer or the bond fee.

34. The following day, Plaintiff made an appointment with the President of OSU OKC to inform her of the situation before she heard about it secondhand.

35. The following week, Mr. Quillin obtained a copy of the probable cause affidavit submitted by Detective Robert Varney which contained numerous false pieces of information, all of which were easily verifiable. For starters, Detective Varney asserted that Plaintiff was employed as a caretaker for an elderly woman named Helen Grassman; that Plaintiff would come to Ms. Grassman's home to assist her with her daily activities which would include helping Ms. Grassman remember to take her medications, bathing, regular house chores and other daily tasks; that Plaintiff accepted a check from Mrs. Grassman totaling $10,000 on May 28, 2016.

36. In addition to the allegations against Plaintiff, Detective Varney had submitted probable cause affidavits against a number of other persons with the surname "Dawson," all of whom were related to each other but none of whom were related to Plaintiff.

37. Additionally, all of the other Dawsons who were involved in the case are African American. Plaintiff is Caucasian.

38. Plaintiff made arrangements with her Human Resources department to supply a letter verifying her employment at OSU OKC during the relevant time period and submitted the same to Mr. Quillin, who provided it to the Oklahoma County District Attorney's Office on May 18, 2017.

39. Plaintiff was asked whether she would be willing to "come downtown" and give a statement to Detective Varney. Plaintiff was anxious to speak to Detective Varney but concerned that, given his recklessly false probable cause affidavit, it could somehow be used against her. Plaintiff offered to speak with Detective Varney "off the record," but was refused and Plaintiff was advised anything she said would be admissible against her in court.

40. On May 24, 2017, Plaintiff returned home after work with her daughter to find a police officer patrolling the parking lot of her apartment complex. The officer passed the Plaintiff and her daughter twice as Plaintiff was getting her daughter and their groceries out of the car. Feelings of anxiety and powerless return and as soon as Plaintiff was able to get her daughter inside her apartment, Plaintiff found her jail release paperwork so she could prove she was out on bond and had a court date set the next month.

41. Plaintiff began to sob and had to call a friend to help her calm down.

42. Due to the stress and anxiety of the situation, Plaintiff made several appointments with a therapist at her own expense.

43. The only evidence connecting the Plaintiff to the alleged crime was the check Detective Varney asserted was made out to the Plaintiff, Maribeth Marino Dawson. However, the check was actually *not* made out to Maribeth Marino Dawson but rather to a *Markieth* Dawson, a male relative of the other Dawsons implicated in the alleged crime.

44. At a court hearing on June 8, 2017, Mr. Quillin sought out the an assistant District Attorney and asked to see a copy of the check. The same was clearly made out to Markieth Dawson, not Maribeth Marino Dawson. Because it was apparent that the charges against Plaintiff were wholly frivolous and without merit, the same were immediately dismissed.

45. On September 15, 2017, Judge Lisa Davis found that Plaintiff was entitled to have her record expunged in full of the felony charge and arrest.

46. There is an affirmative causal nexus between Plaintiff's wrongful arrest, detention and malicious prosecution and the policies or customs of the OKCPD. Among the unconstitutional policies or customs were:

a. A policy or custom of failing to properly train and supervise officers in the techniques of reliably investigating serious crimes;

b. A policy or custom of failing to discipline officers who transgress the rights of citizens during their investigations; and

c. A policy or custom of investigating crimes in a manner designed to prove a case against a convenient suspect by procuring and relying on unreliable evidence.

## CAUSES OF ACTION

**COUNT I – False Arrest and Malicious Prosecution in Violation of the Fourth and/or Fourteenth Amendments to the United States Constitution Pursuant to 42 U.S.C. § 1983 against Defendant Varney.**

47. Paragraphs 1-46 are incorporated herein by reference.

48. Defendant Varney was reckless and deliberately indifferent to Plaintiff's rights in his investigation into Plaintiff for financial exploitation of the elderly and, as a result, submitted an affidavit of probable cause that was entirely and demonstrably false. The investigation conducted by Defendant Varney was biased, slanted, incomplete and unreasonable.

49. Defendant Varney lacked sufficient probable cause upon which to seek and have a warrant issued for Plaintiff's arrest.

50. The arrest of Plaintiff was devoid of probable cause as required by the Fourth Amendment, as applied to the States by the Fourteenth Amendment. This wrongful arrest violated Plaintiff's right to be secure against unreasonable seizure, and violated her Fourth Amendment-protected sense of security and individual dignity.

51. The wrongful arrest was a proximate cause of Plaintiff's imprisonment, economic and personal losses, emotional distress, pain and suffering and other damages.

52. Defendants are also liable for the Constitutional tort of malicious prosecution. In particular, as set forth herein: (a) Defendants caused Plaintiff's continued confinement or prosecution; (b) the original criminal action against Plaintiff was terminated in Plaintiff's favor; (c) there was no probable cause to support the original arrest, confinement or prosecution; (d) Defendants acted with malice (*i.e.*, Defendants intentionally, or with reckless disregard for the truth, falsified, omitted or suppressed evidence); and (e) Plaintiff has sustained damages.

53. This malicious prosecution was a proximate cause of Plaintiff's imprisonment, economic and personal losses, emotional distress, pain and suffering and other damages.

**COUNT II – Municipal Liability under *Monnell* against Defendant OKCPD**

54. Paragraphs 1-54 are incorporated herein by reference.

55. The OKCPD maintained a policy and custom of inadequate training and supervision within its white-collar crime division, allowing officers like Defendant Varney to submit reckless, flagrantly false and unsubstantiated affidavits in support of a felony arrest warrant.

56. This policy and custom of inadequate training and supervision was implemented, maintained and allowed to persist with deliberate indifference to its known consequences and despite the obviousness that maintenance of such policies, practices and customs were substantially likely to result in the violation of citizens' constitutional rights.

57. By failing to discipline Varney for this and other wrongful conduct, the OKCPD encouraged, ratified and/or approved of the unconstitutional acts and/or omissions alleged herein.

58. As a direct and proximate result of the aforementioned policies, practices and/or customs, Plaintiff suffered imprisonment, economic and personal loss, emotional distress, pain and suffering and other damages.

**COUNT III – Negligence/Wrongful Imprisonment against Defendant OKCPD**

59. Paragraphs 1-58 are incorporated herein by reference.

60. Detectives within the OKCPD's white-collar crime division owed Plaintiff a duty to use reasonable care in the investigation of crimes reported against her and the determination of probable cause to arrest and charge Plaintiff.

61. Detective Varney failed to use reasonable care in investigating the crime reported and had Plaintiff arrested without sufficient probable cause to do so.

62. As a direct and proximate result of Detective Varney's tortuous conduct, Plaintiff suffered imprisonment, economic and personal losses, emotional distress, pain and suffering, and other damages.

63. Detective Varney's actions were taken in the course and scope of his employment with the OKCPD.

64. OKCPD is liable for Detective Varney's action pursuant to the Oklahoma Government Tort Claim Act, 51 O.S. § 151, *et seq*.

**COUNT IV – Violation of Article II § 30 of the**
**Oklahoma State Constitution against all Defendants.**

65. Paragraphs 1-64 are incorporated herein by reference.

66. The Oklahoma Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated." Okla. Const. art. II, § 30.

67. Defendant Varney violated Plaintiff's right to be free from unreasonable seizure in violation of Okla. Const. art. II, § 30.

68. The OKCPD is vicariously liable for the violations of Plaintiff's rights under the Oklahoma Constitution.

69. As a direct and proximate result of the violation of Plaintiff's rights under the Oklahoma Constitution, Plaintiff suffered imprisonment, economic and personal losses, emotional distress, pain and suffering, and other damages.

WHEREFORE, premises considered, Plaintiff prays that this Court grant her the relief sought, including but not limited to, damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, punitive damages, reasonable attorney fees and all other relief deemed appropriate by this Court.

Respectfully submitted,

SMOLEN | LAW

/s/Donald E. Smolen, II
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
611 S. Detroit Ave.
Tulsa, OK 74120
(918) 777-4LAW (4529)
don@smolen.law
laura@smolen.law
*Attorneys for Plaintiff*